GEORGE C. JOHNSON, EXECUTOR OF ALEXANDER G. JOHNSON, DECEASED, RESPONDENT, *v.* THE CITY OF TROY, APPELLANT.

ROBERT H. McCLELLAN AND JAMES LANSING, RESPONDENTS, *v.* THE SAME, APPELLANT.

*Board of education of Troy — drafts drawn by it on the chamberlain — the board cannot employ counsel to assist the drawee in collecting them.*

The board of education of the city of Troy, having purchased coal for the schools from a merchant, audited his account, and drew a draft upon the chamberlain of the city for the amount due. The chamberlain having refused to pay the draft because not countersigned by the comptroller, or audited by the common council, proceedings were instituted to compel its payment, in which counsel were retained by, and appeared for, the board of education. Subsequently the draft was countersigned by the comptroller and paid.

In an action by the counsel who appeared for the board of education to recover for their services, *held,* that the board of education had no authority to aid the drawee in collecting his draft, or any rights to be protected in such proceedings, and that they, therefore, had no authority to employ counsel, and their action in so doing was illegal and created no obligation against either the board or the city.

APPEAL from a judgment in favor of the plaintiff, entered upon the verdict of a jury, and an from order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

The action was brought against the city for professional services rendered for the board of education, one of the departments thereof.

The board of education was created by chapter 198 of 1849. The charter of the city, in force at the time the services were rendered, was contained in chapter 598 of 1870.

Both of the above entitled cases were founded upon the same facts.

*R. A. Parmenter*, for the appellant.

*James Lansing*, for the respondents.

BOARDMAN, J. :

The board of education of the city of Troy became indebted to Barton & Tupper, coal merchants, for a supply of coal for the schools of said city. On September 5, 1871, the board of education audited the account, and gave to Barton & Tupper its draft upon the chamberlain of the city for the amount due. The chamberlain refused to pay the draft when presented, because it was not countersigned by the comptroller of the city as required by law, and upon the further ground that the claim had not been audited and allowed by the common council. Proceedings were taken to compel the chamberlain to pay the draft, which was afterwards, upon being countersigned by the comptroller, paid. Professional services were obtained for such proceedings by the board of education, and drafts of the board given in payment therefor. The comptroller refused to countersign such drafts. Upon proceedings to compel such signature, a mandamus was granted at Special Term, and upon appeal to the General Term the order granting such mandamus was reversed, but no opinion written. It was contended, upon such appeal (1), that the employment of counsel by the board was illegal and unauthorized, and (2) that expenses for counsel were not. " contingent expenses," within the charter of the city. In August, 1875, this action was brought against the city, and a recovery had.

It is apparent, upon these facts, that the board of education fully discharged its duty when it gave its draft upon the chamberlain in favor of Barton & Tupper for the bill of coal. Thereafter, the presentation, collection and payment of that claim was ·a matter between the city and Barton & Tupper. The board of ·education was under no kind ɔf obligation, nor was it its duty, to employ counsel to enforce such claim. It had no such power. The proceedings to enforce the payment of the draft were in the interest and for the benefit of Barton & Tupper, and not of the board. The act of the board, therefore, in employing counsel to collect Barton & Tupper's debt was outside of any authority given the board by law — a voluntary act, unsupported by any obligation, legal or moral. Such employment was thus illegal, and imposed no obligation upon the city.

Nor do we think the board of education had any *rights* to be guarded which could justify the employment of attorneys. It had given its draft to Barton & Tupper. Whether such draft was to be audited by the common council, or countersigned by the comptroller, was the holders' business to find out, not the drawers. The payees were entitled to their money when the draft was presented to the chamberlain in proper shape. It was not the duty of the board to follow its draft, and attempt to enforce its payment against or in spite of the law. The ignorance or misconduct of co-ordinate branches of a city government may create much trouble or mischief, but it does not give to either any *rights* as against the other to be guarded. If there be friction and diverse opinions, they must be adjusted by agreement, or settled by the courts. But it is no part of the duty of one department to enforce against another department of the same city the claims and obligations of third persons. It is sufficient for each department to do its duty, and that does not require a vindication of its authority by legal action.

We conclude, therefore, that the board of education had no authority to employ counsel to enforce the claim of Barton & Tupper against the city, and hence such action was illegal, and created no obligation against either the board or the city.

It follows that the judgment and order below must be reversed and a new trial granted, costs to abide event.

The same order must be made in the case of *Robert H. McLellan, etc.,* v. *The City of Troy,* which is founded upon the same state of facts.

LEARNED, P. J., and BOCKES, J., concurred.

Judgment and order reversed and new trial granted, costs to abide event.